IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 13, 2002

## CARROL PRESTON FLANNARY v. JOYCE ANN FLANNARY

**Appeal from the Circuit Court for Hawkins County**
**No. 10161**

**FILED JANUARY 16, 2003**

**No. E2002-00869-COA-R3-CV**

---

CHARLES D. SUSANO, JR., J., concurring in part and dissenting in part.

I concur in the majority's holding that the entire value of the property deeded to Wife by her mother is Wife's separate property. I also agree with the majority's conclusion that the parties' residence at the time of their divorce constituted marital property. I write separately to express my disagreement with so much of the majority opinion as concludes that the trial court erred in awarding Wife a judgment for $24,000 against Husband.

Trial courts have wide discretion in arriving at an equitable division of marital property. *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983); *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994). Because a division of marital property is a discretionary function of the trial court, appellate courts accord great weight to a trial court's judgment in this area. *Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996). It is only when the lower court abuses that discretion that an appellate court is justified in tampering with the trial court's judgment. In another context, the Supreme Court has stated that "[a]n abuse of discretion can be found only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001).

The trial court made extensive remarks regarding the "missing" $48,000:

> THE COURT: Okay. Let's talk about the issue of the $48,000.00 that was withdrawn out of his retirement. No, she didn't go to the police with it, because he's the one that – the only one that – if she didn't get it, he's the only one that knew it was gone. He's the only one that knew it was in there, apparently. I don't know why in the world he

took this money out for over a period of three or four months in hundred dollar bills and put it in a drawer. The house could have burned. A lot of things could have happened to it. It's – it's just – he says he put it in there. She says she don't [*sic*] know anything about it. I can't see why he did it. It was in his control and possession when it went in the drawer. What took it out – there's been no evidence here to me that you could convict anybody for taking this money out. It's apparently gone, or at least he says it's gone. And he's the man that was in full control of this money after it left the bank until it got in that drawer. It was his decision to put it in the drawer. There are a lot of other safer places to put it. To put it in a fruit jar and buried [*sic*] it in the back yard would have been better than putting it in that drawer, because a lot of things could have happened to it, or one of these children could have found it and got it. Anything could have happened to it. He could have gotten it and taken it out. She could have gotten it and taken it out. Somebody else could have gotten it and taken it out. I don't know what happened to it. If I did, I'd tell you, but I don't – from what I heard, neither one of them knows what happened to it. So that money's just where it is. It's retirement money and she's due half of it.

\* \* \*

MR. PARKER: Judge, when that air-conditioner came on, I missed the – on the $48,000.00, I missed what you – the last thing you said. What was your ruling on that?

MR. BEELER: He said, basically...

THE COURT: That it is marital property. He was in full control of it at all times by getting it out, putting it in that drawer. It was marital property when it come [*sic*] out of the – in the bank. It was marital property when he took it out. It was marital property when he put it in the drawer. And I don't know where it went. He was the last person in control of it that I know about.

MR. PARKER: Does he owe her $24,000.00? Is that what...

THE COURT: He owes her marital – that has to be divided like marital property, yes.

MR. PARKER: So he owes her $24,000.00? Very well.

-2-

THE COURT: It's to be divided like any other marital property.

MR. PARKER: Very well.

MR. BEELER: Your Honor, is the Court directing that he pay her $24,000.00 of money that was not there at the time of the divorce? I mean, the law is clear that unless the Court can find that he has it or that she has it, that it's a marital asset...

THE COURT: I'm finding that he was the last person that this Court knows that was in full control of that money.

MR. PARKER Can she have a judgment for that amount against him, Judge?

THE COURT: That's part of your division of the marital assets.

When these remarks are viewed *in toto*, several things seem clear. The trial court found that the $48,000 withdrawn by Husband from the bank represented property of the marriage. The evidence does not preponderate against this finding. The court clearly did not find that Wife had taken this money from Husband's bedroom. What the court did find – and what I believe is particularly significant on this issue – was that Husband was in control of the money and that his careless handling of these funds was the efficient cause of their disappearance. As the majority opinion points out, Husband's only explanation for not putting the money in a safe deposit box was that such action had never occurred to him.

I disagree with the majority's conclusion that the trial court "made no finding that the $48,000 had been dissipated." On the contrary, I believe the trial court's remarks – without utilizing the word "dissipate" or a derivative of that word – clearly show that the court reached that conclusion. One of the definitions of the word "dissipate" is "[t]o waste or squander." Webster's II New Riverside University Dictionary 389 (Anne H. Soukhanov ed., 1994).

The issue of the missing $48,000 was raised on this appeal. Husband urged us to find that the trial court erred in awarding Wife $24,000. This issue necessarily brings into play the factors set forth in Tenn. Code Ann. § 36-4-121(c) (Supp. 2002), including subsection (c)(5) which mentions "dissipation."

In my judgment, the quote in the majority opinion from *Brock v. Brock*, 941 S.W.2d 896, 900 (Tenn. Ct. App. 1996) is not implicated by the facts of the instant case. In *Brock*, we were addressing property owned by Mr. Brock at the time of the marriage that had been "merged into the 'wealth' of the marriage." *Id.* at 901. As the majority recognizes, the quote from *Brock* does not mean that a court should ignore a parties' dissipation that has resulted in property being gone. Under

-3-

such circumstances, the property does not fall within the rubric of ***Brock's*** language of "not there." *Id*. at 900.

I find no abuse of discretion by the trial court in its judgment awarding Wife a judgment against Husband for $24,000. I would affirm the trial court's judgment in its entirety.

Accordingly, I concur in part and dissent in part.

_____
CHARLES D. SUSANO, JR., JUDGE